PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KAREN SUTTON and KIMBERLY HINTON, )
)
      Plaintiffs-Appellants, )
)
v. ) No. 96-1481
)
UNITED AIR LINES, INC., )
)
      Defendant-Appellee. )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-S-121 )

_____

Lisa Hogan (Patrick F. Carrigan and Beth A. Doherty Quinn with her on the brief) of Brownstein, Hyatt, Farber & Strickland, Denver, Colorado, for appellee.

Shawn D. Mitchell of Ireland, Stapleton, Pryor & Pascoe, Denver, Colorado, for appellants.

_____

Before **BRORBY, BARRETT, and MCKAY** Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

Karen Sutton and Kimberly Hinton (collectively referred to as Plaintiffs) appeal the district court's dismissal of their Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 _et seq._, discrimination claims for failure to state a claim upon which relief may be granted. See Sutton v. United Airlines, Inc., No. 96-S-121, 1996 WL 588917 (D. Colo. Aug.

28, 1996).  For the following reasons, we affirm.

Background

Plaintiffs, who are twin sisters, are currently commercial airline pilots for regional commuter airlines.  However, they share a "life long goal to fly for a major air carrier."  In 1992, Plaintiffs applied for commercial airline pilot positions with United Air Lines, Inc. (United) and were invited to interview in Denver, Colorado.  At their interviews, Plaintiffs were informed that their uncorrected vision disqualified them from pilot positions with United, in that applicants for pilot positions must have uncorrected vision of 20/100 or better in each eye.  Plaintiffs' uncorrected vision is 20/200 in the right eye and 20/400 in the left eye.[1]  Plaintiffs' corrected vision is 20/20 in both eyes.

Plaintiffs Amended Complaint, filed pursuant to the ADA, alleged that United discriminated against them in the hiring process by rejecting their applications because of their "disability," their uncorrected vision, and/or because United regarded them as disabled. Plaintiffs asserted they are disabled under the ADA because their uncorrected vision substantially limits their major life activity of seeing.  They averred their vision limitations are permanent and that without corrective measures, they would "effectively be unable to see" well enough to conduct normal everyday activities such as driving, watching television, or shopping.  In addition, Plaintiffs alleged United regarded them as disabled in violation of

---

[1]     A person with visual acuity of 20/200 can see an object from 20 feet only as well as a person with 20/20 vision can see an object at 200 feet.

the ADA because United's policy of requiring uncorrected vision of 20/100 or better blocks Plaintiffs from an entire class of employment, global airline pilots, without any objective evidence of job relatedness or safety.

On August 28, 1996, the district court granted United's motion to dismiss. The court concluded that Plaintiffs' Amended Complaint failed to state a claim under the ADA. The district court ruled that Plaintiffs were not disabled within the meaning of the ADA because their vision did not substantially limit a major life activity. The court stated that with corrective measures Plaintiffs' were "able to function identically to individuals without a similar impairment" and as such Plaintiffs were not substantially limited in the major life activity of seeing. Sutton, 1996 WL 588917, at *3. The court reasoned that "[t]o adopt a definition of 'disabled' that would include persons whose vision is correctable by eyeglasses or contact lenses would result in an expansion of disability protection beyond the logical scope of the ADA. Millions of Americans suffer visual impairments no less serious that those of the Plaintiffs. Under such an expansive reading, the term 'disabled' would become a meaningless phrase, subverting the policies and purposes of the ADA and distorting the class the ADA was meant to protect." Id. at *5. With respect to Plaintiffs' claim that United regarded them as disabled in violation of the ADA, the district court found no support for Plaintiffs' allegation that United regarded them as substantially impaired in the major life activity of seeing based on stereotype, myth, or unsubstantiated fears. Id. At best, the court reasoned that Plaintiffs established that United regarded them as "unable to satisfy the

requirements of a particular passenger airline pilot position." Id. at *6.

On appeal, Plaintiffs contend the district court erred in dismissing their Amended Complaint for failure to state a claim under the ADA. Plaintiffs assert that they alleged sufficient facts to establish that: (1) they were qualified applicants with a disability because they are substantially limited in the major life activity of seeing, and (2) United regarded them as having a substantially limiting impairment because its policy deprives them of employment throughout the global air carrier industry with no rational job-related basis. Plaintiffs argue that the district court erred in evaluating their physical impairment, their vision, with the benefit of corrective measures, in direct contradiction to the Equal Employment Opportunity Commission's (EEOC) Interpretive Guidance, which provides that the determination of whether an individual has a physical impairment and whether an individual is disabled within the meaning of the ADA must be done without regard to mitigating or corrective measures.

United responds that Plaintiffs' vision does not constitute a "physical or mental impairment" within the meaning of the ADA and that, even if it does, it does not "substantially limit" a major life activity. First, United contends that a minor, relatively common condition, such as Plaintiffs' nearsightedness and subsequent need for glasses, is not an impairment under the ADA. Second, United asserts that even if Plaintiffs are impaired within the meaning of the ADA, the EEOC's Interpretive Guidance, stating that disability determinations be made without regard to mitigating or corrective measures, is in

direct conflict with the ADA's statutory requirement that a disability be a physical or mental impairment that "substantially limit[s] one or more of the major life activities of such individual." See 42 U.S.C. § 12101(2). United argues that to evaluate a disability without regard to mitigating measures would read out the ADA's statutory requirement that the impairment be "substantially" limiting. United reasons that if an individual can utilize corrective measures to mitigate the effects of an impairment to a degree such that there is no substantial limitation on a major life activity, then the individual is not disabled within the meaning of the ADA. Finally, United asserts that Plaintiffs can offer no substantive evidence it regarded them as anything other than as unable to meet the rational job-related safety requirements of the jobs they sought.

We review the district court's dismissal of a complaint for failure to state a claim upon which relief may be granted *de novo*. Chemical Weapons Working Group, Inc. v. United States Dep't of the Army, 111 F.3d 1485, 1490 (10th Cir. 1997). "'We uphold a dismissal under Fed. R. Civ. P. 12(b)(6) only when it appears that the plaintiff[s] can prove no set of facts in support of the claims that would entitle [them] to relief, accepting all well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff[s].'" Yoder v. Honeywell Inc., 104 F.3d 1215, 1224 (10th Cir.) (quoting Fuller v. Norton, 86 F.3d 1016, 1020 (10th Cir. 1996)), cert. denied, ___ U.S. ___ (1997). With this standard in mind, we turn to Plaintiffs' ADA claims.

Discussion

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[2] 42 U.S.C. § 12112(a). See Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994) (quoting 42 U.S.C. § 12112(a)), cert. denied, 513 U.S. 1152 (1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). See White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995) (quoting 42 U.S.C. § 12111(8)).

To establish a claim under the ADA, Plaintiffs must demonstrate that: (1) they are disabled persons within the meaning of the ADA; (2) they are qualified, i.e., able to perform the essential functions of the job, with or without reasonable accommodation (which they must describe); and (3) United discriminated against them in its employment decision (the

---

[2]      In this analysis, we rely on cases interpreting both the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., because the standards are largely the same. See Andrews v. Ohio, 104 F.3d 803, 807 (6th Cir. 1997) (concluding "cases construing one statute are instructive in construing the other"); Wooten v. Farmland Foods, 58 F.3d 382, 385 n.2 (8th Cir. 1995) ("cases interpreting either [ADA or Rehabilitation Act] will be instructive for this analysis" of the ADA); Bolton v. Scrivner, Inc., 36 F.3d 939, 943 (10th Cir. 1994) ("'Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA.'") (quoting 29 C.F.R. § 1630, App. § 1630.2(g)), cert. denied, 513 U.S. 1152 (1995).

job application procedure and/or hiring process) because of their alleged disability. See Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997); White, 45 F.3d at 360-61.

Taking all Plaintiffs' allegations in their Amended Complaint as true, as we must, Plaintiffs have established they are "qualified" for the position of commercial airline pilot and that United refused to continue their interviews (or hire them) due to their alleged disability, their uncorrected vision. Plaintiffs are both commercial airline pilots with regional commuter airlines; each holds an airline transport pilot license, which supersedes United's requirement for a commercial license; each has recorded thousands of hours of flight time as Pilot in Command; and each has a First-Class medical certificate from the Federal Aviation Administration (FAA). Additionally, United sent each plaintiff a letter confirming that her uncorrected vision, each plaintiff's alleged disability, disqualified her from employment as a United pilot. Thus, at issue in this case, is whether Plaintiffs' vision qualifies them as "individuals with a disability" within the meaning of the ADA.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The statutory requirement that disability determinations be made "with respect to the individual," contemplates an individualized, a case-by-case determination of whether a given impairment substantially limits a major life activity of the individual. Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 166 4th Cir. 1997) (*en banc*) (citing Ennis v.

National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59-60 (4th Cir. 1995) (collecting cases holding that a finding of disability must be made on a case-by-case basis)). See also Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, 962 (7th Cir. 1996) (holding that "a determination of disability must be made on an individualized, case-by-case basis"); Katz v. City Metal Co., Inc., 87 F.3d 26, 32 (1st Cir. 1996) (same); Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996) (applying factors in an individualized manner).

Here, Plaintiffs allege they are "disabled" within the meaning of the subparagraphs (A) and (C) because their uncorrected vision is a physical impairment that substantially limits their major life activity of seeing and United regarded them as having a substantially limiting impairment when it disqualified them from all airline pilot positions. We address each of Plaintiffs' contentions in turn.

## I.  42 U.S.C. § 12102(2)(A) -- Actual Disability

Subparagraph (A) defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. 42 U.S.C. § 12102(2)(A). Therefore, to qualify as having a "disability" pursuant to subparagraph (A), Plaintiffs must establish (1) that their vision is a "physical or mental impairment;" and (2) if their vision is an impairment, that it "substantially limits one or more of the[ir] major life activities." See id.

### 1.  Physical or Mental Impairment

Plaintiffs must establish that their vision is a "physical or mental impairment." See

id. The ADA does not define a "physical or mental impairment." Hence, we are confronted with a question of statutory interpretation. Our inquiry begins with an examination of the language of the statute itself. Ramah Navajo Chapter v. Lujan, 112 F.3d 1455, 1460 (10th Cir. 1997). "'When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances.'" Id. (quoting United States v. Thompson, 941 F.2d 1074, 1077 (10th Cir. 1991), cert. denied, 503 U.S. 984 (1992) (quotation omitted)). In addition, "[w]hen a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). "[C]ommon and ordinary usage may be obtained by reference to a dictionary." United States v. Roberts, 88 F.3d 872, 877 (10th Cir. 1996).

The term "impairment" is not defined by the statute. However, the statute does require that the impairment "substantially limit" a major life activity. See 42 U.S.C. § 12102(2)(A). Thus, the impairment must be significant, and not merely trivial. Welch v. City of Tulsa, Okla., 977 F.2d 1415, 1417 (10th Cir. 1992). See also Runnebaum, 123 F.3d at 167 ("Because the impairment must impose a 'substantial limitation' on 'one or more of the major life activities,' the impairment must be significant, not merely trivial."); Byrne v. Board of Educ., Sch. of West Allis-West Milwaukee, 979 F.2d 560, 564 (7th Cir. 1992) ("The statute's inclusion of the limiting adjectives 'substantial' and 'major' emphasizes that the impairment must be a significant one."); Forrisi v. Bowen, 794 F.2d 931, 933-34 (4th Cir. 1986) (concluding that "[t]he statutory language, requiring a *substantial* limitation of a *major*

life activity, emphasizes that the impairment must be a significant one"). In addition, Webster's Dictionary defines "impair" as "to make worse by or as if by diminishing in some material respect." Webster's Ninth New Collegiate Dictionary 574 (1984). See also Black's Law Dictionary 677 (5th ed. 1981) ("To weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner."); Ballentine's Law Dictionary 584 (3d ed. 1969) ("To make worse; to diminish in quality, value, excellence, or strength; to deteriorate.").

We are also guided by the definition promulgated by the EEOC in its regulations issued to implement Title 1 of the ADA. See 29 C.F.R. § 1630.1(a); 42 U.S.C. § 12116 (requiring the EEOC to issue regulations to implement Title 1 of the ADA). The regulations define a "physical or mental impairment" as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

To further assist in the interpretation of the ADA, the EEOC published an Interpretive Guidance on Title I of the Americans with Disabilities Act. 29 C.F.R. § 1630, App. Under the EEOC's Interpretative Guidance, "[t]he existence of an impairment is to be determined

- 10 -

without regard to mitigating measures such as medicines, or assistive or prosthetic devices."[3]

29 C.F.R. § 1630, App. § 1630.2(h) para. 2.

Accordingly, we must determine whether Plaintiffs' vision makes worse or diminishes in a material or significant respect any of the enumerated body systems. See 29 C.F.R. § 1630.2(h). We will evaluate Plaintiffs' vision in the uncorrected state, without the benefit of mitigating or corrective measures, because the EEOC's Interpretive Guidance is reasonable and consistent with the statutory mandates themselves. The fact that a disorder or condition may be mitigated or correctable does not affect the underlying nature of the disorder or condition. If the underlying disorder or condition makes worse or diminishes in a material respect any of the enumerated body systems of the individual, then it should be considered an "impairment," regardless of whether the individual compensates for this worsening or diminishment by corrective measures. See Roth v. Lutheran Gen. Hosp., 57

---

[3]     It is well established that we must defer to the EEOC's regulatory definition unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). However, although we give great deference to the EEOC's interpretation of the ADA found in the regulations promulgated under the express authority of Congress and the ADA itself, we do not do the same for interpretative guidance promulgated under the Administrative Procedure Act. See Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1282 (10th Cir. 1994) (no special deference due to Department of Labor comment, which is a "purely interpretive rule") (citing Chrystler Corp. v. Brown, 441 U.S. 281, 301-04 (1979) (explaining distinction between interpretative rules and substantive or legislative rules)). Hence, while the EEOC's Interpretive Guidance may be entitled to some consideration in our analysis, it does not carry the force of law and is not entitled to any special deference under Chevron.

F.3d 1446, 1454 (5th Cir. 1995) (concluding impairment determination made without regard to mitigating measures).

In addition, "[i]t is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments." 29 C.F.R. § 1630, App. § 1630.2(h) para. 3. Hence, impairment does not include: physical characteristics such as eye color, hair color, left-handedness, height, weight, or muscle tone that are within the "normal" range and are not the result of a physiological disorder; characteristic predisposition to illness or disease; pregnancy; common personality traits such as poor judgment or quick temper where these are not the symptoms of a mental or psychological disorder; or environmental, cultural or economic disadvantages such as poverty, lack of education or a prison record. Id. See Andrews v. Ohio, 104 F.3d 803, 810 (6th Cir. 1997) (holding physical characteristics of excessive weight and lack of cardio-respiratory endurance and strength not impairments under the ADA); Daley v. Koch, 892 F.2d 212, 215 (2nd Cir. 1989) (holding in Rehabilitation Act case that personality traits of "poor judgment, irresponsible behavior and poor impulse control" could be described as commonplace and "in no way r[ose] to the level of an impairment"); Tudyman v. United Airlines, 608 F. Supp. 739, 746 (C.D. Cal. 1984) (finding body builder's "unique musculo-skelital [sic] system and body composition" not an impairment because it is not the result of a "physiological disorder[]," "cosmetic disfigurement," or "anatomical loss"); Trembczsynski v. City of Calumet City, No. 87-C-0961, 1987 WL 16604 (N.D. Ill. Aug. 31, 1987) ("Being

slightly myopic [20/40 uncorrected vision] is a physical characteristic, not . . . an 'impairment' as contemplated by the [Rehabilitation] Act."). Compare Cook v. Rhode Island, Dep't of Mental Health, Retardation, & Hosps., 10 F.3d 17, 23 (1st Cir. 1993) (concluding "morbid obesity" may be physical impairment).

Plaintiffs averred that their uncorrected vision prevents them from engaging in normal everyday activities, such as, driving, watching television, and shopping. After careful consideration, we hold that Plaintiffs' averments are sufficient to establish that their uncorrected vision of 20/200, in the right eye, and 20/400, in the left eye, makes worse or diminishes the eyes, the special sense organ of sight, compared to a normal person with 20/20 vision.[4] Therefore, for the purposes of the motion to dismiss, Plaintiffs established their vision is a physical impairment within the meaning of the ADA.

2. "Substantially Limits" A "Major Life Activity"

Plaintiffs must also establish that their physical impairment, their vision, "substantially limits one or more of the[ir] major life activities." See 42 U.S.C. § 12102(2)(A). The ADA does not define either "substantially limits" or "major life activity." Therefore, we are again confronted with questions of statutory interpretation.

---

[4]     It could be argued that by definition uncorrected vision of 20/200 and 20/400 makes worse or diminishes in a material respect the eyes on any individual creating a *per se* impairment. However, we do not espouse or endorse any *per se* impairments or disabilities. As noted *supra*, the ADA's use of individualized language requires courts to make case-by-case impairment and disability determinations. See Runnebaum, 123 F.3d at 169 (determination of whether individual with asymptomatic HIV is impaired or disabled must be made on individualized case-by-case basis).

We begin our analysis with the term "major life activity." While the statute itself does not define a "major life activity," the ADA regulations adopt the definition found in the Rehabilitation Act regulations, 34 C.F.R. § 104. Bolton, 36 F.3d at 942. As defined, a "major life activity" includes, but is not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). See MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1444 (10th Cir. 1996) (adopting regulation's definition of "major life activities") (quoting 29 C.F.R. § 1630.2(i)); Lowe, 87 F.3d at 1173 (including sitting, standing, lifting and reaching from 29 C.F.R. § 1630, App. § 1630.2(i)).

In their Amended Complaint, Plaintiffs alleged they are substantially limited in the major life activity of seeing. Inasmuch as seeing is expressly included in the EEOC's definition of major life activities, which has been previously adopted by this court, we do not decide what other activities may qualify and we now turn to consider whether Plaintiffs' physical impairment "substantially limits" their major life activity of seeing.

Pursuant to the ADA regulations, in order for a physical or mental impairment to be "substantially limiting," the individual must be:

> (i)      Unable to perform a major life activity that the average person in the general population can perform; or
> (ii)     Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

In determining whether an individual is substantially limited in a major life activity, the following three factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). See MacDonald, 94 F.3d at 1444 (quoting 29 C.F.R. § 1630.2(j)(2)); Lowe, 87 F.3d at 1173 (same); Bolton, 36 F.3d at 943 (same).

Thus, in order to establish that they are substantially limited in the major life activity of seeing, Plaintiffs must establish that they are unable to see or are significantly restricted as to the condition, manner, or duration of their ability to see as compared to the average person in the general population, taking into consideration the three listed factors. See 29 C.F.R. § 1630.2(j)(1)(i) and (ii). Plaintiffs have made no allegations that they are blind or unable to see.[5] Hence, we are concerned with Plaintiffs' vision as compared to the vision of the average person in the general population.

There is no dispute that Plaintiffs' vision impairment is permanent and results in the reliance on corrective measures, eye glasses or contact lenses, in order to carry out normal daily activities.[6] However, Plaintiffs argue that we must evaluate their vision impairment

---

[5]      Plaintiffs point out in their Amended Complaint that "corrected visual acuity of 20/200 or less constitutes legal blindness for purposes of Supplemental Security Insurance disability classification." However, this standard applies to *corrected* vision not *uncorrected* vision. Plaintiffs' corrected visual acuity is acknowledged to be "20/20 or better." Hence, any implication that they are "legally blind" is without merit.

[6]      On appeal, we do not consider the effects, if any, that eye surgery, such as radial keratotomy, may have on the permanency or long term impact of Plaintiffs' vision.

without respect to these mitigating measures. Plaintiffs rely on the EEOC's Interpretive Guidance for § 1630.2(j), which provides that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. § 1630, App. § 1630.2(j)(2) para. 8. Accordingly, Plaintiffs argue that they are disabled because their uncorrected vision substantially limits their major life activity of seeing.

United responds that the EEOC's Interpretive Guidance is in direct conflict with the statutory language requiring that the physical or mental impairment "substantially limit" a major life activity. United argues that to evaluate whether an individual has an impairment without regard to mitigating or corrective measures effectively reads out the statutory requirement that the impairment be "substantially" limiting. United reasons that the determination of whether Plaintiffs are "disabled" must be made taking into consideration any mitigating or corrective measures utilized by Plaintiffs.

Therefore, the crucial determination becomes whether the EEOC's Interpretive Guidance is correct that disability inquiries should be made without regard to mitigating or corrective measures or is in conflict with the statutory mandate that the impairment "substantially limit" a major life activity. The courts that have considered this issue are split.

_____

However, we are mindful that as technology advances so must our consideration of these questions.

While some courts have expressly or implicitly followed the EEOC's guidance,[7] others have expressly or implicitly rejected the EEOC's guidance as being in direct conflict with the statutory language requiring a "substantial" limitation.[8]

_____

[7] See Doane v. City of Omaha, 115 F.3d 624, 627 (8th Cir. 1997) (stating "analysis of whether [plaintiff] is disabled does not include consideration of mitigating measures"); Harris v. H & W Contracting Co., 102 F.3d 516, 520-21 (11th Cir. 1996) (holding EEOC's interpretation is consistent with the ADA's legislative history, thus, an individual's disability must be assessed without regard to mitigating measures); Holihan v. Lucky Stores, Inc., 87 F.3d 362, 366 (9th Cir. 1996) (stating determination made without regard to mitigating measures without discussion or application), cert. denied, ___ U.S. ___ (1997); Fallacaro v. Richardson, 965 F. Supp. 87, 93 (D.D.C. 1997) ("This Court finds that the EEOC's 'no mitigating measures' interpretation is eminently reasonable, consistent with the language and purpose of the Rehabilitation Act, and supported by the legislative history of the ADA."); Wilson v. Pennsylvania State Police Dep't, 964 F. Supp. 898, 902-907 (E.D. Pa. 1997) (expressly adopting EEOC guidance); Sarsycki v. United Parcel Serv., 862 F. Supp. 336, 340 (W.D. Okla. 1994) (relying on EEOC interpretation as authoritative without discussion).

[8] See Gilday v. Mecosta County, 124 F.3d 760, 767-68 (6th Cir. 1997) (holding EEOC's interpretive guidance in conflict with statutory language and disability determinations should be made taking into consideration any mitigating measures) (2-1 decision); Cline v. Fort Howard Corp, 963 F. Supp. 1075, 1081 n.6 (E.D. Okla. 1997) (recognizing split of authority and determining that "the better reasoned approach in the context of vision is one which evaluates the limitation with regard to the use and effectiveness of corrective devises"); Gaddy v. Four B Corp., 953 F. Supp. 331, 337 (D. Kan. 1997) ("EEOC Interpretive Guideline § 1630.2(j)'s pre-medicated perspective is in direct conflict with the ADA's express statutory language . . .."); Moore v. City of Overland Park, 950 F. Supp. 1081, 1088 (D. Kan. 1996) (same); Murphy v. United Parcel Serv., Inc., 946 F. Supp. 872, 881 (D. Kan. 1996) (rejecting "without" portion of § 1630.2(j) because "plain language of the ADA conflicts with the EEOC's Interpretive Guidance"); Schluter v. Industrial Coils, Inc, 928 F. Supp. 1437, 1445 (W.D. Wis. 1996) ("EEOC's interpretation is in direct conflict with the language of the statute that requires plaintiffs in ADA cases to show that an impairment 'substantially limits' their lives."); Coghlan v. H.J. Heinz Co., 851 F. Supp. 808, 813 (N.D. Texas 1994) (concluding "EEOC interpretation requires that one not having a limitation be considered as having a disability even though the statutory language clearly requires substantial limitation");

- 17 -

We join those courts which have rejected this portion of § 1630.2(j) of the EEOC's Interpretive Guidance. We hold that this portion of the EEOC's Interpretive Guidance is in direct conflict with the plain language of the ADA. The determination of whether an individual's impairment substantially limits a major life activity should take into consideration mitigating or corrective measures utilized by the individual. In making disability determinations, we are concerned with whether the impairment affects the individual in fact, not whether it would hypothetically affect the individual without the use of corrective measures.

This portion of the EEOC's Interpretive Guidance is not only in direct conflict with the statute, but is also internally inconsistent with other portions. In discussing "substantially limit" generally, the Interpretive Guidance states:

> Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. An impairment rises to the level of disability if the impairment substantially limits one or more of the individual's major life activities. . . .

See also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 191-192 n.3 (5th Cir. 1996) (noting that "had Congress intended that substantial limitation be determined without regard to mitigating measures, it would have provided for coverage under § 12102(2)(A) for impairments that have the *potential* to substantially limit a major life activity"); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993) ("[A] person is not handicapped if his vision can be corrected to 20/200."), cert. denied, 511 U.S. 1011 (1994); Sweet v. Electronic Data Sys., Inc., No. 95-Civ.-3987, 1997 WL 204471, at *5 (S.D.N.Y. 1996) (visual impairment of 20/20 in one eye and correctable to 20/80 in other eye does not qualify as a "disability" because it does not substantially limit ability to participate in any major life activity); Deckert v. City of Ulysses, No. 93-1295, 1995 WL 580074 (D. Kan. Sept. 6, 1995) (rejecting EEOC interpretation), *aff'd on other grounds*, 105 F.3d 669 (Table) (10th Cir. 1996).

The ADA and this part, like the Rehabilitation Act of 1973, do not attempt a "laundry list" of impairments that are "disabilities." The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on *the effect of that impairment on the life of the individual*. Some impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors.

29 C.F.R. § 1630, App. § 1630.2(j) para 1-2 (emphasis added). Thus, the EEOC recognized it is the *actual effect* on the individual's life that is important in determining whether an individual is disabled under the ADA.

Furthermore, in discussing whether an individual is disabled under the "regarded as" prong of the ADA, 42 U.S.C. § 12102(2)(C), because the employer "regards" the individual as having a substantially limiting impairment when in fact the individual's impairment is not substantially limiting, the Interpretive Guidance uses the example of "an employee [who] has *controlled* high blood pressure that is not substantially limiting." Id. at § 1630.2(l) para. 6 (emphasis added). Under this example, the employee is not *actually* disabled because in the *controlled* state the impairment does not "substantially limit" a major life activity. The employee's controlled high blood pressure does not affect, in fact, the ability to perform a major life activity.

Accordingly, to state a prima facie case and survive United's motion to dismiss, Plaintiffs' vision in its corrected state must "substantially limit" their major life activity of seeing. Plaintiffs cannot make this showing. It is undisputed that Plaintiffs' corrected vision is "20/20 or better." Thus, while Plaintiffs' uncorrected vision would undoubtedly

"substantially limit" their major life activity of seeing, this is a hypothetical situation. In fact, Plaintiffs do not limit their normal daily activities to those that could be performed with their uncorrected vision. Plaintiffs admit that with their corrective measures they "function identically to individuals without a similar impairment." Plaintiffs merely don their eye glasses (or contact lenses) and go about all their normal daily activities in the same or similar condition, manner, or duration as the average person in the general population. Hence, Plaintiffs can prove no set of facts upon which relief may be granted on this claim.

Plaintiffs cannot have it both ways. They are either disabled because their uncorrected vision substantially restricts their major live activity of seeing and, thus, they are not qualified individuals for a pilot position with United, or they are qualified for the position because their vision is correctable and does not substantially limit their major life activity of seeing. See Murphy v. United Parcel Serv., Inc., 946 F. Supp. 872, 878 (D. Kan. 1996) (defendant "is trying to have it both ways" by claiming he is disabled due to high blood pressure, but that it is controlled sufficiently that he can perform the job).

## II.  42 U.S.C. § 12102(2)(C) -- Regarded As Disabled

Subparagraph (C) defines a "disability," as "being regarded as having" a physical or mental impairment that substantially limits one or more of the major life activities of the individual. 42 U.S.C. § 12102(2)(C). The regulations provide three ways an individual is "regarded as" being disabled: (1) the individual: "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated . . . as constituting such

limitation;" (2) the individual "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) the individual "[h]as none of the impairments defined in [29 C.F.R. § 1630.2(h)(1) and (2)] but is treated . . . as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l)(1)-(3). See MacDonald, 94 F.3d at 1444 (quoting and adopting 29 C.F.R. § 1630.2(l)). "Thus, '[a] person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment,'" regardless of whether the individual actually has an impairment. MacDonald, 94 F.3d at 1444 (quoting Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995) (citation omitted)). The focus is on the impairment's or the perceived impairment's effect upon the attitudes of others. Id. See Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 913 (11th Cir. 1996).

In this case, Plaintiffs contend United "regards" them as disabled in the major life activity of working.[9] Plaintiffs assert that United perceives them as unfit to work as global airline pilots because: (a) United's policy is not limited to certain pilot positions, aircraft, or

---

[9] In their Opening Brief, Plaintiffs assert that "United regards [them] as substantially impaired in the major life activity of seeing, working, or both." (Plaintiffs-Appellants' Opening Brief at 15). However, in their Amended Complaint, Plaintiffs' claim is limited to whether United regards them as substantially limited in the major life activity of working. (Plaintiffs-Appellants' Appendix at 9-10). In reviewing the grant of a motion to dismiss, we are concerned only as to whether Plaintiffs' complaint states a claim upon which relief may be granted. Yoder, 104 F.3d at 1224. Therefore, we consider only the claim found in Plaintiffs' Amended Complaint, i.e., whether United regards Plaintiffs as substantially limited in the major life activity of working.

routes but encompasses all pilot positions; (b) United presumed without substantiation that they cannot perform the functions of the job; and (c) United disqualified them based on "myth, fear or stereotype" that individuals with uncorrected vision of worse than 20/100 constitute a safety hazard. In addition, Plaintiffs argue that other global airlines have similar or higher uncorrected vision standards than United, thus blocking Plaintiffs from seeking the same class of employment elsewhere in the industry.

United responds that it did not regard them as disabled. United argues that it did not regard Plaintiffs as substantially limited in the major life activity of working because its requirement did not preclude Plaintiffs from a "class of job." United contends that Plaintiffs merely "fail[ed] to meet the rational job-related safety requirements of the positions they s[ought]."

An employer does not necessarily regard an employee as substantially limited in the major life activity of working simply because it believes that individual is incapable of performing a particular job. The statutory requirement that the employer regard the employee as having a substantially limiting impairment indicates that the an employer regards an employee as substantially limited in the ability to work when the employer regards the employee's impairment or perceived impairment as foreclosing generally the type of employment involved. Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 806 (5th Cir. 1997). See Hileman v. City of Dallas, Tex., 115 F.3d 352, 354 (5th Cir. 1997) ("An

- 22 -

impairment must substantially limit employment in general, not merely the particular job that the plaintiff may wish to hold.").

In order "[t]o demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show 'significant[] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities.'" Bolton, 36 F.3d at 942 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). See MacDonald, 94 F.3d at 1444 (quoting Bolton). A "class of jobs" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.3(j)(3)(ii)(B). See Siemon, 117 F.3d at 1176 (quoting 29 C.F.R. § 1630.3(j)(3)(ii)(B)); MacDonald, 94 F.3d at 1444-45 (same). A "broad range of jobs in various classes" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.3(j)(ii)(C). See Siemon, 117 F.3d at 1176 (quoting 29 C.F.R. § 1630.3(j)(3)(ii)(C)); MacDonald, 94 F.3d at 1445 (same). However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). See Siemon, 117 F.3d at 1176 (quoting 29 C.F.R. § 1630.2(j)(3)(i));

MacDonald, 94 F.3d at 1445 ("If neither of these definitions is met, and an individual instead shows only that he is unable 'to perform a single, particular job,' . . . the regulations and case law make clear that he has not shown that he is 'substantial[ly] limit[ed] in the major life activity of working.'"); Wooten, 58 F.3d at 386 (holding that under the ADA, "'working' does not mean working at a particular job of that person's choice"); Bolton, 36 F.3d at 942 (quoting 29 C.F.R. § 1630.2(j)(3)(i)); Welch, 977 F.2d at 1419 (holding that "an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act").

Therefore, in order to establish a disability under the "regarded as" prong of the ADA with respect to the major life activity of working, an individual must show that the employer regarded him or her as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes. In this case, we are concerned with whether Plaintiffs can present any set of facts based on their Amended Complaint establishing that United treated Plaintiffs as having a substantially limiting impairment. To do so, Plaintiffs must establish United's disqualification of them from all pilot positions as a significant restriction on their ability to perform a class of jobs.[10] See Foreman, 117 F.3d at 806 ("the question is whether Foreman *was treated* by [defendants] as having an impairment that substantially

---

[10] At oral argument, United stated that Plaintiffs were not disqualified from its non-passenger pilot positions. However, for the purposes of this appeal, we will assume Plaintiffs were disqualified from "all pilot positions" as they alleged in their Amended Complaint.

limits a major life activity"); MacDonald, 94 F.3d 1445 (concluding that to establish a disability plaintiff must show defendant regarded him as being substantially limited in performing a class of jobs). We hold that Plaintiffs cannot make this showing. Taking all Plaintiffs' allegations as true, Plaintiffs can establish only that their physical impairment, their uncorrected vision, prevents them from working for United as a pilot; a single, particular job. They cannot show disqualification from a "class of jobs."

We are concerned with whether *United* regards Plaintiffs as "disabled," not whether the airline industry as a whole regards individuals with uncorrected vision of 20/100 or worse as "substantially limited" in a major life activity. It is the perception of the employer in the case, not the perceptions or practices of others in the industry, that matters. See Cook, 10 F.3d at 25-26 (using example demonstrating focus is on employer in question not other employers in the industry). However, we do examine the airline industry to assist in determining whether Plaintiffs' impairment substantially limits their employment generally in a "class of jobs."

The "class of jobs" Plaintiffs argue United disqualifies them from is that of "global airline pilot." However, this description is too narrow to constitute "class of jobs." A "class of jobs" consists of jobs that utilize "similar training, knowledge, skills or abilities." 29 C.F.R. § 1630, App. § 1630.2(j)(3)(ii)(B). As Plaintiffs' point out in their Amended Complaint, "[t]here is nothing unique about the job activities of United pilots that distinguishes United's requirements from other airlines." (Plaintiffs-Appellants' Appendix

at 10, ¶38(g)). Thus, the "class of jobs" to which Plaintiffs must compare themselves is that of all pilot positions at all airlines, because they all require the same or similar training, knowledge, skills, or abilities. This class would include, but not be limited to, all pilot positions at global airlines, national airlines, commuter/regional airlines, and cargo/courier airlines. See e.g. McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 373 (6th Cir. 1997) (class of jobs at issue included all manufacturing jobs not only narrow range of assembly line manufacturing jobs requiring repetitive motion or frequent lifting of more than ten pounds); MacDonald, 94 F.3d at 1445 ("[T]axiing aircraft is neither 'a class of jobs,' nor 'a broad range of jobs in various classes,' but is instead 'a single, particular job."); Wooten, 58 F.3d at 386 (concluding plaintiffs' carpal tunnel syndrome "prevent[ed] him from performing a narrow range of meatpacking jobs"); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (arm impairment did not prevent plaintiff from working in entire class of welding jobs, only those requiring substantial climbing); Welch, 977 F.2d at 1419 ("an impairment that an employer perceives as limiting an individual's ability to perform only one job [firefighter] is not a handicap").

For example, "an individual who cannot be a commercial airline pilot because of a minor vision impairment, but who can be a commercial airline co-pilot or a pilot for a courier service, would not be substantially limited in the major life activity of working." 29 C.F.R. § 1630, App. § 1630.2(j) para. 15. With this example, the EEOC illustrates an individual who is "not substantially limited in the ability to perform any other major life activity and,

with regard to working, [is] only unable to perform either a particular specialized job or a narrow range of jobs." Id. See Bolton, 36 F.3d at 942 (quoting 29 C.F.R. § 1630.2(j)(3)(i) and Welch); Welch, 977 F.2d at 1419 (inability "to perform only one job is not a handicap under the [Rehabilitation] Act"); Daley, 892 F.2d at 215 ("Being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity."); Forrisi, 794 F.2d at 934 ("an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job"); Tudyman, 608 F. Supp. at 746 (concluding "refusal to hire someone for a single job does not in and of itself constitute perceiving the [person] as a handicapped individual").

Adopting Plaintiffs' reasoning would imply that anyone who failed to obtain a single job because of a single requirement of employment would become a "disabled" individual because the employer would thus be regarding the applicant's failure as substantially limiting in the major life activity of working. Forrisi, 794 F.2d at 935. See Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996) (stating that "otherwise . . . anyone[] could establish a *prima facie* discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in [a protected] group"). This reading would stand the Act on its head. This provision of the ADA seeks to remedy perceived disabilities that, like actual disabilities, extend beyond the isolated mismatch of employer and employee. We agree with the court's sentiments

expressed in Hileman, "[w]e refuse to construe the . . . Act as a handout to those who are in fact capable of working in substantially similar jobs . . . ." Hileman, 115 F.3d at 354 (discussing Rehabilitation Act).

Finally, we note that while the FAA may not believe there is a safety concern regarding pilots with uncorrected vision of 20/100 or worse, that alone does not prevent United from presenting evidence to the contrary, were it necessary to refute a prima facie case of discrimination. As long as United does not practice illegal discrimination, we discern no reason why United cannot maintain a higher standard for safety than the FAA. It must be remembered that the FAA sets the minimum criteria for a pilot's license, not the maximum.

## Conclusion

We hold that Plaintiffs' Amended Complaint alleged sufficient facts to support a conclusion that their uncorrected vision constituted a physical impairment under the ADA. However, for the foregoing reasons, we hold that Plaintiffs cannot present any set of facts showing their vision, when viewed with mitigating and corrective measures, substantially limits the major life activity of seeing. Nor can Plaintiffs show United regarded them as substantially limited in a major life activity of working by finding Plaintiffs unfit for its commercial pilot positions. Therefore, we affirm the district court's dismissal of Plaintiffs' ADA claims for failure to state a claim upon which relief may be granted.

**AFFIRMED.**