TERESITA PACK,

     Plaintiff-Appellant,

       v.

KMART CORPORATION, a Michigan
Corporation; STEVE NICHOLAS, an
individual,

     Defendants-Appellees.

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

     Amicus Curiae.

No. 97-7120

ORDER
Filed February 4, 1999

Before **BRORBY**, **BARRETT**, and **EBEL**, Circuit Judges.

     Appellant's petition for rehearing is denied.

     The suggestion for rehearing en banc was transmitted to all of the judges of the

court who are in regular active service as required by Fed. R. App P. 35.  As no member

of the panel and no member in regular active service on the court requested that the court

be polled, the suggestion is also denied.

However, in order to clarify this court's opinion filed on December 29, 1998, the original opinion is withdrawn. The court's clarified opinion is attached to this order and is filed on this date.


Entered for the Court,
Patrick Fisher, Clerk of Court


By:

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TERESITA PACK,

    Plaintiff-Appellant,

      v.

KMART CORPORATION, a Michigan
Corporation; STEVE NICHOLAS, an
individual,

    Defendants-Appellees.

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Amicus Curiae.

No. 97-7120

Appeal from United States District Court
for the Eastern District of Oklahoma
(D.C. No. 96-CV-643-B)

Steven A. Novick, Tulsa, Oklahoma (Douglas L. Inhofe and Mark A. Waller, Inhofe Jorgenson & Balman, Tulsa, Oklahoma, on the briefs), for the appellant.

Jon E. Brightmire, Doerner, Saunders,, Daniel & Anderson, L.L.P., Tulsa Oklahoma, (Kristen L. Brightmire, with him on the brief), for the appellee.

Geoffrey L. Carter, Attorney, United States Equal Employment Opportunity Commission, (C. Gregory Stewart, General Counsel, Phillip B. Sklover, Associate General Counsel, Carolyn L. Wheeler, Assistant General Counsel, with him on the brief), for *amicus curiae* United States Equal Employment Opportunity Commission.

Before **BRORBY**, **BARRETT**, and **EBEL**, Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

Teresita Pack (Pack) appeals the district court's grant of judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, in favor of Kmart Corporation (Kmart) on her Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, claim.[1] For the following reasons, we affirm.

Background

In 1976, Pack began her employment with Kmart in Muskogee, Oklahoma, as a dishwasher in the cafeteria. Over the next 18 years, she worked in various positions throughout the store with an excellent record. In 1987, Pack transferred to a pharmacy technician position. In late 1993, Pack began seeing her family physician, Dr. Kuykendall, for stress-related physical and emotional problems. Dr. Kuykendall in turn referred her to Dr. Koduri, a psychiatrist, who diagnosed Pack with major depression, moderate to severe, on July 8, 1994. (App. Vol. II at 529-30.)

Also in late 1993, Pack's performance at work began to decline. She made technical errors in the pharmacy, including mislabeling prescriptions and incorrectly entering prescription data into the pharmacy computer. On June 22, 1994, Pack took a medical leave of absence from work until August 8, 1994. (App. Vol. II at 500.) On August 12, 1994, Pack received her annual evaluation, which was an unsatisfactory rating. *Id.* at 499. Her unsatisfactory rating was based on her errors in the pharmacy and poor concentration. *Id.* On September 9, 1994, Pack took a second medical leave

_____

[1] Pack does not appeal from the district court's grant of judgment as a matter of law in favor of Kmart and defendant Steve Nicholas on her intentional infliction of emotional distress claims.

- 2 -

of absence at the recommendation of Dr. Koduri. *Id.* at 501. Her leave was extended until January 5, 1995, at which time she returned to work with a note from Dr. Koduri restricting her to 20 hours her first week, with no restrictions thereafter.[2] *Id.* at 502. On January 11, 1995, Dr. Koduri recommended restricting Pack's hours to 32 hours per week for the next two weeks. *Id.* at 503. Upon her return, Pack continued to make the same type of prescription errors. On February 2, 1995, Kmart discharged Pack based on her continued errors as a pharmacy technician. *See* (App. Vol. I at 154.)

On December 11, 1996, Pack filed a complaint against Kmart alleging, *inter alia*, that Kmart violated the ADA when it terminated her employment on February 2, 1995. (Appellee's Supp. App. at 4.) Pack alleged that she had a "nervous breakdown" in May, 1994 after which she requested a transfer as an accommodation of her disability [3] and that Kmart failed to transfer her out of her pharmacy technician position or provide other reasonable accommodation. *Id. See* (App. Vol. I at 12.)

On September 17, 1997, after the close of all evidence, the district court granted Kmart's oral Rule 50 motion for judgment as a matter of law. (App. Vol. II at 489.) The district court found that "periodic sleep deprivation" and "the inability to concentrate," as set forth, were not major life

---

[2]     Although the note from Dr. Koduri restricted her to 20 hours, Pack worked 40 hours her first week back in January, 1995. It is unclear, however, whether this was due to Pack's desire to work more hours and, thus, earn more or to Kmart's demands. *See* (App. Vol. I at 90-91; Vol. II at 313-14.)

[3]     In her complaint, Pack identifies her "disability" as "the inability to tolerate the stressful environment created by Defendant Nicholas," a Kmart pharmacist and one of her supervisors. (Appellee's Supp. App. at 4 ¶20.) However, at trial the evidence demonstrated that Pack's alleged impairment was major depression, moderate to severe. *See* (App. Vol. II at 529-30.)

activities covered by the ADA. *Id.* The district court also found that: the evidence in this case showed Pack suffered from "periodic sleep deprivation on occasion," *id.*; her evidence of her inability to concentrate was "almost exclusively limited to job performance in a specific job as a pharmacy technician and the evidence does not show that [it] interferes with other aspects of her life . . .," *id.*; and even assuming sleep and concentration are major life activities, Pack "in this case has not demonstrated that her impairment of depression substantially limits either her concentration or her ability to sleep," *id.* at 490. The district court determined that:

> based on this record there is insufficient evidence to show an inability to perform the major life activities of sleeping and concentration. Plaintiff has offered evidence that her sleep has been disrupted on occasion, but it was not shown that it was permanent. I believe the evidence, at best, shows it was on a sporadic basis. Plaintiff has further not offered any evidence that her depression has prevented her from performing totally either sleep or concentration and, in fact, the evidence is to the contrary that the plaintiff has concentrated in other areas of her life outside of her employment in the pharmacy at Kmart, and further that there is certainly evidence that she is able to sleep even though there may be -- the sleep may be disrupted occasionally.

*Id.* at 490-91.

On appeal, Pack contends that the district court erred: (1) in determining that sleep and concentration are not major life activities, and (2) in concluding that reasonable jurors could not find her depression substantially limited her major life activities of sleep and concentration.

We review the district court's grant of a motion for judgment as a matter of law *de novo*, applying the same standard as the district court. *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997) (citations and quotations omitted). Judgment as a matter of law is appropriate "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party . . .." Fed. R. Civ. P. 50(a)(1). "[A] court may grant the motion only if the evidence points but one way and is susceptible to no

reasonable inferences which may support the opposing party's position." *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998) (internal quotation omitted.) On review, we examine the evidence in the light most favorable to Pack, extending to her the benefit of all reasonable inferences. *Id.*

Discussion

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) (quoting 42 U.S.C. § 12112(a)), *cert. denied*, 513 U.S. 1152 (1995). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . the accommodation would impose an undue hardship . . .." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (quoting 42 U.S.C. § 12111(8)).

To establish a claim under the ADA, Pack must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, i.e., able to perform the essential functions of the job, with or without reasonable accommodation (which she must describe); and (3) Kmart discriminated

- 5 -

against her in its employment decision (failure to transfer) because of her alleged disability.[4]  *See Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997); *White*, 45 F.3d at 360-61.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  The statutory requirement that disability determinations be made "with respect to the individual," contemplates an individualized, a case-by-case determination of whether a given impairment substantially limits a major life activity of the individual.  *Sutton v. United Airlines*, 130 F.3d 893, 897-98 (10th Cir. 1997) (collecting cases), *petition for cert. filed*, 66 U.S.L.W. 3783 (U.S. Jun. 1, 1998) (No. 97-1943).

Pack alleged she was "disabled" within the meaning of subparagraph (A) because her depression is a mental impairment that substantially limits her major life activities of sleeping and concentration.  Therefore, Pack was required to establish (1) that her depression is a "physical or mental impairment;" and (2) if her depression is an impairment, that it "substantially limits one or more of [her] major life activities."  *See* 42 U.S.C. § 12102(2)(A).

In its motion for judgment as a matter of law, Kmart conceded that depression is a mental impairment.  (App. Vol. II at 375.)  Therefore, for the purposes of this appeal, we assume that Pack's major depression, moderate to severe, constitutes a mental impairment within the meaning of the ADA.  We must now determine whether Pack's mental impairment, major depression, "substantially limit[ed] one or more of [her] major life activities."  *See* 42 U.S.C. § 12102(2)(A); *Sutton*, 130 F.3d

---

[4]      Although Pack argued Kmart discriminated against her in its failure to transfer her out of her pharmacy technician position, we will not consider this issue in view of our holding that, on the evidence presented at trial, Pack cannot demonstrate that she is a disabled person under the ADA.  *See infra* Discussion.

at 900.

### A.  Major Life Activity

Pack and the Equal Employment Opportunity Commission (EEOC), arguing as  *amicus curiae*, contend that sleep and concentration are major life activities.  Pack asserts that sleep is "clearly" a major life activity as it is as significant as any activity listed in the EEOC's regulations and a basic activity that is performed with little or no difficulty by the average person in the population.  (Appellant's Opening Brief at 15.)  Pack reasons that concentration is also a major life activity because it is required, to some extent, in most daily activities.  In addition, Pack relies on the *EEOC Guidance on Psychiatric Disabilities And the Americans With Disabilities Act* , EEOC Compliance Manual (BNA) No. 59, at E-2 (Mar. 27, 1997), which lists sleeping and concentrating as major life activities limited by mental impairments.[5]  *Id*. at 16.

A "major life activity" is a basic activity that the average person in the general population can perform with little or no difficulty.  Major life activities include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i); *Sutton*, 130 F.3d at 900.  *See* 29 C.F.R. § 1630, App. § 1630.2(i)(including sitting, standing, lifting, and reaching).  "[T]he touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Bragdon v. Abbott*, 118 S.Ct. 2196, 2205 (1998) (internal quotation omitted).  *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir. 1998) ("The term 'major life activit[y],' by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance.").

---

[5]  While the EEOC's guidance may be entitled to some consideration in our analysis, it does not carry the force of law and is not entitled to any special deference.  *Sutton*, 130 F.3d at 899 n.3.

In deciding whether a particular activity is a "major life activity," we ask whether that activity is significant within the meaning of the ADA, rather than whether that activity is important to the particular individual. "We do not think that such major life activities as seeing, hearing, or walking are major life activities only to the extent that they are shown to matter to a particular ADA plaintiff." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 642 (2d Cir. 1998) (quoting *Reeves*, 140 F.3d at 151-52). *See Bragdon*, 118 S.Ct. at 2204-05 (wherein the Court determined that reproduction is a major life activity without considering whether reproduction was an important part of the individual respondent's life).

We hold that sleeping is a major life activity, but concentration is not. Sleeping is a basic activity that the average person in the general population can perform with little or no difficulty, similar to the major life activities of walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. *See Colwell*, 158 F.3d at 643 (". . . sleep, which is undoubtedly a major life activity."). However, concentration is not itself a major life activity. Concentration may be a significant and necessary component of a major life activity, such as working, learning, or speaking, but it is not an "activity" itself.

### B. Substantially Limits

We now consider whether Pack's mental impairment/depression "substantially limits" her in the major life activity of sleeping.

In order for a physical or mental impairment to be "substantially limiting," the individual must be:

> (i)  Unable to perform a major life activity that the average person in the general population can perform; or

- 8 -

(ii)     Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); *Sutton*, 130 F.3d at 900.

In determining whether an individual is substantially limited in a major life activity, three factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected permanent or long term impact of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2); *Sutton*, 130 F.3d at 900.  In addition, we evaluate whether a physical or mental impairment is substantially limiting in a major life activity while taking into consideration any mitigating or corrective measures utilized by the individual, such as medications.  *Sutton*, 130 F.3d at 902.

Thus, in order to establish that she was substantially limited in the major life activity of sleeping, Pack was required to establish that she was unable to sleep or was significantly restricted as to the condition, manner, or duration of her ability to sleep as compared to the average person in the general population, taking into consideration the three factors and any mitigating or corrective measures.  *See* 29 C.F.R. § 1630.2(j)(1)(i) and (ii); *Sutton*, 130 F.3d at 900-02.  Pack did not allege that she was completely unable to sleep.  Hence, we are concerned with Pack's ability to sleep as compared to the average person in the general population.

At trial, Pack testified that in January, 1995, "[s]ometimes I would go off into -- finally go to sleep and I would wake up shaking, crying, nervous, upset.  I would be up for two or three hours before I could go back to sleep again.  Sometimes I wouldn't get but maybe two, three hours at the most sleep all night long. [sic]  I would toss and turn all night long." (App. Vol. II at 316.)  The only

other evidence of Pack's ability or inability to sleep is found in Dr. Koduri's medical notes. On July 8, 1994, in her initial consultation with Dr. Koduri, Pack complained of "decreased sleep with increased latency, moving frequently in her sleep, [and] not feeling fresh when waking up in the morning, . . .." *Id*. at 529. On July 11, 1994, Dr. Koduri noted that Pack was "[s]till having significant problem with sleep, up until 2 or 3 in the morning." *Id*. at 504. On July 22, 1994, Dr. Koduri noted Pack "says that she was feeling extremely drowsy, sleepy all the time." *Id*. at 505. On July 29, 1994, Dr. Koduri noted Pack "doesn't feel as drowsy as she used to, her sleep is getting better, and even her husband has commented on her improvement." *Id*. at 506. On August 17, 1994, Dr. Koduri cut back Pack's evening medication because it "makes her too sleepy." *Id*. at 508. There are no further notations regarding sleep until November 21, 1994, when Dr. Koduri noted Pack had been having erratic sleep patterns and discussed with her the need for a structured sleep pattern. *Id*. at 517. Finally, on December 5, 1994, Dr. Koduri noted Pack's "sleep is improving a little bit." *Id*. at 518.

While the evidence showed Pack had episodes of sleep disruption and/or waking without feeling rested during 1994 and January 1995, there is no indication that her sleep problems were severe, long term, or had a permanent impact.[6] Additionally, Dr. Koduri was able to generally control Pack's sleep problems with medication, even going too far in some instances, resulting in making her too sleepy or drowsy. *See id*. at 505 & 508. Pack failed to satisfy her burden to present evidence of her impairment and the extent to which the impairment limited her major life activity

---

[6] We note that the EEOC agrees that "[s]leeping is not substantially limited just because an individual has some trouble getting to sleep or occasionally sleeps fitfully." *EEOC Guidance on Psychiatric Disabilities And the Americans With Disabilities Act*, EEOC Compliance Manual (BNA) No. 59, at E-2 n.16 (Mar. 27, 1997). (App. Vol. II at 532.)

of sleeping.  Therefore, the district court did not err in determining that Pack failed to show her depression substantially limited her in the major life activity of sleep.

<u>Conclusion</u>

We hold that sleep is a major life activity, but concentration itself is not.  We further hold that Pack failed to establish she was substantially limited in the major life activity of sleeping.  Thus, Pack is not disabled within the meaning of the ADA.  We AFFIRM the district court's grant of judgment as a matter of law in favor of Kmart on Pack's ADA discrimination claim.[7]

**AFFIRMED.**

---

[7]  Additionally, we note that Pack failed to present any evidence regarding the ability to sleep of the average person in the general population which would have significantly aided the trier of fact in a situation like this where there is a dearth of other evidence.  *See e.g. Colwell*, 158 F.3d at 644 ("Difficulty sleeping is extremely widespread.  Colwell made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population.").