**Mark A. McCLEARY, Plaintiff,**

v.

**NATIONAL COLD STORAGE, INC., Defendant.**

**No. 98–4031–SAC.**

United States District Court,
D. Kansas.

Sept. 30, 1999.

Lisa Beth Otipoby, Kaw City, OK, James E. Rumsey, Lawrence, KS, for Plaintiff.

Donna S. Colley, Berens & Tate, P.C., Joseph Dreesen, Berens & Tate, P.C., Omaha, NE, Steven R. Fabert, Fisher,

Patterson, Sayler & Smith, Topeka, KS, Timothy M. Welsh, Berens & Tate, P.C., Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This employment discrimination case comes before the court on the defendant National Cold Storage, Inc.'s ("National's") motion for summary judgment (Dk.33). The plaintiff, Mark A. McCleary ("McCleary"), claims that National terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* National seeks summary judgment on several grounds, including the plaintiff's inability to present a prima face case of disability discrimination. The plaintiff opposes summary judgment having filed a memorandum in opposition. (Dk.38). National seeks to strike portions of the plaintiff's memorandum in opposition arguing that the plaintiff's factual statements are not supported by record citations or are based on inadmissible evidence. (Dk.47). The plaintiff also opposes the motion to strike. (Dk.53). Finally, the court is aware that the plaintiff has filed a motion to reopen discovery (Dk.49) for the limited purpose of discovering National's knowledge of McCleary's medical condition.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if

the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269; 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the

same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

■ Summary judgments are "used sparingly in employment discrimination cases." *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995). Because discrimination claims often turn on the employer's intent, courts ·ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir.1994); *see Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994) ("[T]he summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.*, 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988) *overruled on other grounds, McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes of this motion only, the court considers the following to be the uncontroverted facts relevant to its ruling:

1. From May 18, 1990, until his termination in October of 1996, McCleary worked for National as a forklift operator. On July 18, 1995, the plaintiff injured his left foot on the job when a forklift operated by another employee struck him. Prior to his injury, the plaintiff worked the second shift, 2:30 p.m. to 11:00 p.m., and regularly performed the checking work on the main dock that was assigned to some forklift operators.[1]

2. As a result of his foot injury, McCleary was restricted from all work activity for some time. After surgery and a period of recovery, McCleary presented National with a treating physician's medical release dated July 6, 1996, stating that McCleary could do light duty work for four hours a day for the first two weeks, then six hours a day for the next two weeks, and then full eight-hour days. Despite a union grievance opposing any allowance for light duty work for McCleary, National permitted McCleary to work the light duty work schedule recommended by McCleary's treating physician. The light duty work kept McCleary primarily on a forklift.

3. McCleary next presented National with a treating physician's medical release dated August 2, 1996, that said he could return to regular work and could work longer than eight hours a day if part of his regular duty. Following this release, National returned McCleary to the work that he was doing before the injury, that is, principally checking work which required him to do more standing and walking.

4. McCleary complained to his supervisor that the daily walking required for the checking work was causing him pain and was difficult for him to do. McCleary was told he could not use a forklift to perform the checking work.

5. McCleary described the pain experienced with "the excessive walking" required for the checking work as a " 'broomstick' pain on the ball of his foot, hot and cold flashes, burning on the top side arch of his foot, numbness, and needle like pain on the bottom of his foot." (Dk.38, p. 13, ¶ 37).[2]

---

1. The plaintiff offers no citation of record in support of its effort to controvert this statement. Consequently, the court must treat as uncontroverted the defendant's statement that is sustained by the record citation.

2. Though the plaintiff does not supply the record in support of this statement, the defendant does not take issue with this testimony or with the plaintiff's attempt to describe the pain.

6. On September 18, 1996, McCleary called in to say that he would not be at work because of pain in his foot. McCleary called in the next day, September 19, 1996, saying he was sick and would not be reporting for work. Between September 20, 1996, and October 11, 1996, McCleary did not contact National about reporting to work and did not pick up his paychecks.

7. On September 26, 1996, McCleary applied for the position of "Road Driver and/or Quarry" with Green Quarries, Inc., and wrote on the job application that he was "available for work" on September 26, 1996.

8. On October 11, 1996, McCleary reported to work at National with a treating physician's statement that was not signed but was dated "9/30/96." The statement read:

> Mark has had some discomfort in his foot. This has been across the lateral aspect of his midfoot. He denies any antecedent injury. On exam he doesn't have any significant swelling. His area where his operation was seems to be holding up nicely. He does have some tenderness to palpation of the tarsal metatarsal region, particularly over the 3rd and 4th ray basis. There is no significant swelling. His tendinous strength is normal.
>
> Recommend continued symptomatic care for this. I think he can return to his work duties next week. Recommend continued use of AFO. RTC on prn basis.

(Dk. 35, Tab 5, Ex. 4). McCleary learned on October 11, 1996, that National had terminated him.

9. As far as matters included in the summary judgment record offered to show the plaintiff's impairment at the time of his termination, the plaintiff submits the following:

> A. *Letter from Dr. Sergio Delgado,* dated August 29, 1996, and addressed to McCleary's workers' compensation attorney. (Dk. 39, Tab 17). The letter reflects McCleary's complaints of "pain,

coldness, burning, numbness and tingling in left leg and foot" and his explanation that the symptoms were aggravated by "exercising, standing, [and] walking." Dr. Delgado noted that McCleary wore a brace on his left leg and observed:

> He has tenderness to pressure over the medial aspect of the [left] foot with some pain also being experienced with pressure at the mid foot and at the ankle and distal foot. He has limitation of plantar flexion, inversion and eversion of the left ankle with a loss of 20 degrees of plantar flexion and 15 degrees of inversion and eversion on the left. He has some limitation of full motion at mid foot.... There is decreased strength of plantar and volar flexion of about 20% on the left as compared to right. Dorsiflexion of the toes increases his mid foot pain. He cannot walk on his tiptoes and has difficulty walking on his heel because of pain. He cannot squat fully because of left foot pain....
>
> . . . .
>
> He presently has signs and symptoms compatible with residual of sympathetic dystrophy and a mid tarsal fusion. He will continue to have difficulty with activities requiring standing, walking, squatting, and climbing but at this point, he does not appear to need additional treatment other than continued physical therapy intermittently.

B. *Letter from National's Workers' Compensation attorney* dated September 5, 1996, and addressed to McCleary's Workers' Compensation attorney. (Dk. 39, Tab 18). The letter states that McCleary's treating physician, Dr. Horton had reported that McCleary's permanent impairment rating was 15% to the body as a whole. National's attorney translated this rating into a 37% lower extremity rating.

C. *Letter from Dr. Revis Lewis* dated February 7, 1987, and addressed to the Workers' Compensation Administrative

Law Judge Steven Howard. (Dk. 39, Tab 19). The letter, in relevant part, states:

> The patient complains of pain in the left foot which is almost constant. It is usually absent in the morning but comes on with weight bearing and gets worse during the day.... He walks with a limp favoring the left foot. He wears a brace on the left leg and foot. There's some swelling of the left foot with prolonged weight bearing.... He takes occasional pain medication.... He's had to give up some activities such as riding a horse. Going up and down a ladder is painful. He drives his car without difficulty.
>
> ... He went to work for a different company 12/6/96, running a forklift most of the time and is coping quite well. He underwent work hardening before returning to work.
>
> ....
>
> The patient has residual symptoms from a fracture of the left navicular and associated ligamentous injuries, complicated by reflex sympathetic dystrophy, and requiring operative intervention. The patient is considered to have a 40% disability of the left lower extremity which is equivalent to approximately 16% of the body as a whole.

D. *Letter from Dr. Greg Horton* dated October 15, 1998, and addressed to McCleary's attorney in this case. (Dk. 39, Tab 23). The letter states in pertinent part:

> At your request I have performed an evaluation of your client and my patient, Mark McCleary.... I provided him with a final impairment rating on August 5, 1996. At that point I felt that he had done well from his surgery, that his midfoot instability was resolved and he no longer had any acute active symptoms of reflex sympathetic dystrophy. I told him that he was going to need to use a brace long term. It was my impression at that time that he should be able to do the job that he was currently doing. I stated in my note that he was current-

ly driving a forklift and I think that he would be able to do such duty. I had some worries about prolonged standing/walking.

E. *Letter from Joane Wyrick, a retired professor of occupational therapy* dated March 3, 1998, and addressed to McCleary's attorney in this case. (Dk. 39, Tab 25). In relevant part, the letter states:

> At your request, I have reviewed the medical records and job analysis you provided and performed an evaluation on Mr. Mark A. McCleary on March 2, 1998.
>
> ....
>
> The medical records document that he has a chronic disability that substantially limits the major life activities of walking, running, climbing, prolonged standing and standing balance. Of particular note: ....

Wyrick refers, *inter alia,* to the progress notes of Dr. Harris made in July and September of 1995 and to the progress notes of Dr. Horton made from November of 1995 through August of 1996. She quotes from Dr. Horton's August 1996 notes that: "He likely will not be able to do a job which requires prolonged standing." Wyrick also refers to Dr. Delgado's findings noted above. She then sets out the following findings from her evaluation of McCleary on March 2, 1998:

> f. When asked to perform a 4 point crawl, he raises both feet off the floor. The left foot is raised to avoid pain when dragging the toes & the right foot is raised to provide balance.
>
> f. (sic) He walks with a left limp with his AFO on and off and inverts his left foot when climbing and descending stairs.
>
> h. He can not run, but can move rapidly with a shuffle-hop gait in an emergency.
>
> i. He can demonstrate good standing balance on his right foot for the ex-

pected one minute with shoe on and shoe off. He can not stand for 10 seconds on his left foot with shoe and AFO on (9 secs), shoe on (8 secs), shoe off (7 secs).

j. When climbing stairs, he experiences an increase in pain in his left foot when stepping up and raising his body weight to the next riser. He does not experience as much pain descending stairs, when lowering his body down to the next riser on his left leg.

k. He has difficulty climbing a ladder and must reposition his left foot so that he does not bear weight on the middle of his left foot.

Wyrick concludes:

Mr. McCleary is obviously a qualified individual with a disability.

. . . . His disability prevents him from prolonged standing, but not from accomplishing the purpose of the job.

10. Dr. Horton testified that McCleary did not suffer from an "acute injury" on September 30, 1996, but that his symptoms were exacerbated since the work release. On his medical notes for that day, Dr. Horton recorded that McCleary "had some discomfort in his foot" and "some tenderness to palpation" but there was "no significant swelling" and "tendinous strength . . . [was] normal." (Dk. 35, Tab 5). Dr. Horton recommended symptomatic care for the condition, as he found no objective basis for additional medical intervention, such as "other diagnostic test, surgery, immobilization, etc." (Dk. 35, Tab 5, p. 19).

11. In December of 1996, McCleary applied for employment at Metro Park Warehouses, Inc., as a warehouseman/driver. He completed a form indicating that he could perform without special accommodation the essential functions of that job, including: "able to move around in warehouse and adjacent parking areas with concrete, asphalt or gravel surface, including use of steps or ramps between these areas," "able to manipulate up to 100 lbs while loading and unloading freight," "able to carry objects from warehouse to trailer or from trailer to delivery site," and "able to get in and out of trailers and trucks on docks, steps, and/or ladders." (Dk. 35, Tab 13).

12. In March of 1997, McCleary applied for employment at Green Quarries, Inc. as a driver and operator of mixer truck. He completed a pre-employment questionnaire that described the following as "essential functions of this job:" (1) "climbing a minimum of six (6) feet on a ladder or mounting steps on equipment;" (2) "overhead lifting of moderately heavy objects (50–70 lbs.) and/or shoveling crushed rock and other products for a minimum of eight (8) hours a day;" (3) "squatting, kneeling and crawling;" (4) "repetitive bending and lifting motions;" (5) "pushing, pulling and carrying loads weighing a minimum of 25 lbs for long periods of time;" (6) "the use of machinery and or tools that vibrate or torque;" (7) "climb stairs;" and (8) "driving company vehicles and or equipment . . . for long periods of time." (Dk. 35, Tab 10). McCleary completed this questionnaire indicating that he could perform all of these essential functions without accommodation.

## ADA DISABILITY DISCRIMINATION

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Discriminatory acts prohibited under the ADA include "denying equal jobs and benefits" because of the disability, "not making reasonable accommodations to the known physical . . . limitations," and "denying employment opportunities . . . based on the need . . . to make reasonable accommodations." 42 U.S.C. § 12112(b)(4); (5)(A) and (B). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Without direct evidence, the plaintiff's ADA claims are evaluated under

the burden-shifting approach borrowed from *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 747 (10th Cir.1999). Under *McDonnell Douglas,* the plaintiff carries the initial burden of establishing a prima facie case by a preponderance of the evidence. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A prima facie case raises " 'a rebuttable presumption' " of a discriminatory intent. *See Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir. 1994) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir. 1988)). If a plaintiff fails to prove any element of his prima facie case, summary judgment is proper. After the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■ To establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate: (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, "that is, . . . [he] is qualified to perform the essential functions of the job, with or without reasonable accommodation;" and (3) that the employer terminated or took adverse employment action against the plaintiff "under circumstances which give rise to an inference that the termination [or other action] was based on . . . [his] disability." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (citation omitted); *see Siemon v. AT&T Corp.,* 117 F.3d 1173, 1175 (10th Cir.1997); *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

■ Under the ADA, " 'disability' means, with respect to an individual," *inter*

*alia,* "a physical or mental impairment that substantially limits one or more of . . . [his] major life activities." 42 U.S.C. § 12102(2)(A). The definition of disability can be broken down into three elements— impairment, major life activity, and substantial limitation—that correspond to a three-step process. *See Poindexter v. Atchison, Topeka & Santa Fe Railway,* 168 F.3d 1228, 1230 (10th Cir.1999) (citing *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998)). The court first determines whether the plaintiff has an impairment. *Id.* As defined in the EEOC regulations, a "physical impairment" is "[a]ny physiological disorder, or condition, . . . affecting one or more of the following body systems: neurological, musculoskeletal . . . ." 29 C.F.R. § 1630.2(h)(1). There appears to be no dispute that the plaintiff's foot injury is an impairment.

■ "Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity." *Poindexter,* 168 F.3d at 1230 (citation omitted). Major life activities "mean functions such as . . ., performing manual tasks, walking, . . ., and working." 29 C.F.R. § 1630.2(i). " [O]ther major life activities include, but are not limited to, sitting, standing, lifting, and reaching.' " *Poindexter,* 168 F.3d at 1231 (quoting 29 C.F.R. pt. 1630, app. at 347 (1998)). "[A] plaintiff must articulate with precision, the impairment alleged and the major life activity affected by that impairment." *Poindexter,* 168 F.3d at 1232. In opposing summary judgment, the plaintiff nowhere articulates specifically which of the major life activities that he is contending are restricted by his foot injury. Nor does the plaintiff submit admissible medical evidence delineating which life activities are at issue and provable at trial.[3] The

---

**3.** Indeed, the plaintiff has submitted little admissible medical evidence regarding his foot injury and its impact on any major life activities. Because both sides submit and rely upon the clinical notes of McCleary's treating physician, Dr. Horton, the court will consider them without further foundation. The plain-

tiff, however, also submits the unsworn letters of Dr. Delgado, Dr. Revis Lewis, and Dr. Horton. (Dk. 39, Tabs 17, 19, and 23). In its motion to strike, the defendant objects that these letters are inadmissible hearsay. The plaintiff's only response is that these physicians will be witnesses at trial and that their

plaintiff does underline certain activities in quotations taken from federal regulations,

letters are not hearsay pursuant to Fed. R.Evid. 801(d)(1). Presumably, the plaintiff relies on Rule 801(d)(1)(B) as the letters are neither sworn (d)(1)(A) nor statements of identification (d)(1)(C).

All of these letters are inadmissible hearsay. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is not admissible at trial, except as provided by the Federal Rules of Evidence or other statutory authority." *United States v. Cass*, 127 F.3d 1218, 1222 (10th Cir.1997) (citing Fed.R.Evid. 802), *cert. denied*, —— U.S. ——, 118 S.Ct. 1101, 140 L.Ed.2d 155 (1998). Under Fed.R.Evid. 801(d)(1)(B), a prior statement by a witness is admissible if: (1) the witness testifies at trial and is subject to cross-examination concerning the statement; and (2) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive. "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited.... The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States*, 513 U.S. 150, 157–58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). Absent any charge of recent fabrication or improper influence or motive, a prior consistent statement is inadmissible. *United States v. Asher*, 854 F.2d 1483, 1499 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); *see United States v. Beltran*, 165 F.3d 1266, 1272 (9th Cir.1999) (Kozinski, J., concurring), *petition for cert. denied*, —— U.S. ——, 120 S.Ct. 194, —— L.Ed.2d —— (1999). The plaintiff furnishes the court with no basis for believing that at trial these physicians will be charged, expressly or impliedly, with fabrication or improper influence or motive. The plaintiff gives the court no reason for finding that these letters would meet the standards for admissibility under Rule 801(d)(1)(B).

Although the party opposing summary judgment "need not produce evidence in a form that would be admissible at trial, ... the content or substance of the evidence must be admissible." *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995) (citations omitted). "Evidence premised on inadmissible hearsay 'is not suitable grist for the summary judgment mill.'" *Walker v. Runyon*, 979 F.Supp. 1363, 1368 (D.Kan.1997) (quoting *Thomas*, 48 F.3d at 485); *see Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1401 n. 1 (10th Cir.1997). Plainly

and he also quotes the additional factors triggered when the major life activity of

offered for the improper hearsay purpose of the truth stated in them, the physicians' unsworn letters are rejected as improper grist for the summary judgment mill in this ADA case. *See Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 391 (S.D.N.Y.1998).

As for the opinion letter from Joane Wyrick (Dk. 39, Tab 25), the court rejects it not only as inadmissible hearsay but on the Fed.R.Evid 702 grounds argued by the defendant. Rule 702 provides that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." " 'Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence.' *United States v. French*, 12 F.3d 114, 116 (8th Cir.1993)." *Curtis v. Oklahoma City Public Schools Bd.*, 147 F.3d 1200, 1218–19 (10th Cir.1998). Wyrick's letter opinion appears to constitute inadmissible legal conclusions. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C.Cir.1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not otherwise admissible." (quotation omitted)); *Specht v. Jensen*, 853 F.2d 805 (10th Cir.1988) (en banc) (reversible error to allow an expert witness who was an attorney to give his opinions on what was required to make consent to a search effective), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). Moreover, Wyrick's opinion as to the disabling impact of McCleary's foot injury at the time in issue is "presented in sweeping and conclusory terms that fail to state ... [its] basis," *Paulus v. Kaiser Permanente Medical Group, Inc.*, 1999 WL 342041, at *3 (N.D.Cal. May 24, 1999); *see Doren v. Battle Creek Health System*, 187 F.3d 595, 598 (6th Cir. 1999) ("Neither Dr. Ancell's report nor his affidavit provide 'specific facts' " to defeat summary judgment on the issue of substantial limitation); *Murphree v. Transport Company, Inc.*, 168 F.3d 494, 1998 WL 774963, at *1 (8th Cir. Nov. 9, 1998) (expert's conclusory affidavit on claimed disability is insufficient to defeat summary judgment motion), and is not otherwise sustained by the documents of record cited in her report. Even if the hearsay problem is overlooked, Wyrick's opinion letter lacks the specific facts needed to create a genuine issue of material fact and the substantiation needed for reliability and admissibility.

work is involved. From this, the court infers that the plaintiff is contending the major life activities of walking, standing and working are affected by his foot injury. The court must limit its analysis to these major life activities. *Id.* at 1231.

▆▆▆ Third, " 'tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity.' " *Poindexter,* 168 F.3d at 1230 (quoting *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. at 2202). As provided by the EEOC regulations, "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In determining whether a person is substantially limited in a major life activity, the court considers: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or expected permanent or long term impact of or resulting from the impairment." *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999) (citations omitted), *petition for cert. denied,* —— U.S. ——, 120 S.Ct. 45, —— L.Ed.2d —— (1999). "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." *Sutton,* —— U.S. at ——, 119 S.Ct. at 2146. "To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." *Id.* —— U.S. ——, 119 S.Ct. at 2147. Mitigating measures include not only "artificial aids, like medications and devices" but also adjustments that the individual's body undergoes whether consciously or subconsciously.

*Albertsons, Inc. v. Kirkingburg,* —— U.S. ——, 119 S.Ct. 2162, 2168–69, 144 L.Ed.2d 518 (1999).

▆▆ "Substantial limitation" is not synonymous with "utter inabilit[y]." *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. at 2206. "When significant limitations result from the impairment, the definition is met even if the difficulties are not insurmountable." *Id.* But a "mere difference" in an individual's ability to perform a major life activity does not demonstrate a substantial impairment. *Albertsons, Inc. v. Kirkingburg,* —— U.S. at ——, 119 S.Ct. at 2168. The ADA "concerns itself only with limitations that are in fact substantial." *Id.* The Third Circuit recently observed:

> The impairment must be severe when compared to the functioning of the general population. The purpose of the ADA would be undermined if protection could be claimed by those whose relative severity of impairment was widely shared. On the other hand, Congress expressed a strong remedial intent in enacting the ADA, and explicitly found that approximately forty-three million Americans were disabled as of 1990, *see* 42 U.S.C. S 12101(a)(1) (1998), which implies that the definition should not be so restricted that only the most extremely impaired are covered.

*Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 185–186 (3d Cir.1999) (citation omitted).

▆▆▆ "The statutory requirement that disability determinations be made 'with respect to the individual,' contemplates an individualized, and case-by-case determination of whether a given impairment substantially limits a major life activity of the individual." *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 897 (10th Cir.1997) (citations omitted), *aff'd,* —— U.S. ——, 119 S.Ct. 2139, —— L.Ed.2d —— (1999). In short, the determination of a disability is made "on a case-by-case basis." *Albertsons, Inc. v. Kirkingburg,* —— U.S. at ——, 119 S.Ct. at 2169. The Su-

preme Court in *Sutton* emphasized this point:

> The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). Thus, whether a person has a disability under the ADA is an individualized inquiry. *See Bragdon v. Abbott,* 524 U.S. 624, ——, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to consider whether HIV infection is a per se disability under the ADA); 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

—— U.S. at ——, 119 S.Ct. at 2147. The court is not to speculate about a person's condition "based on general information about how an uncorrected impairment usually affects individuals, [but] rather ... on the individual's actual condition." —— U.S. at ——, 119 S.Ct. at 2147. The Supreme Court, however, also recognized in *Albertsons* that "some impairments may invariably cause a substantial limitation of a major life activity." —— U.S. at ——, 119 S.Ct. at 2169 (citation omitted).

▮ Pointing principally at the workers' compensation impairment ratings for his foot, McCleary mistakenly assumes that a permanent impairment to an extremity, by itself, is necessarily a disability under the ADA. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir. 1995); *Robinson v. Neodata,* 94 F.3d 499, 502 (8th Cir.1996) (6% impairment rating "would have little, if any, effect on her ability to perform major life activities"); *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994) (A 9% permanent partial disability rating to the right foot and a 29% permanent partial disability rating to the left foot was among the evidence that the court commented "does little to show that Bolton is restricted from performing a

class of jobs."), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Because there is no dispute that McCleary has an impairment, medical opinions merely expressing the same in conclusory terms are not controlling nor necessarily significant in deciding whether a disability exists. *See Dutcher,* 53 F.3d at 726. Rather, the focus of the court's inquiry is whether the evidence properly of record is sufficient for a reasonable jury to find that the plaintiff's impairment substantially limited him in his activities of walking, standing, or working.

▮ McCleary does not come forth with sufficient detailed evidence to support any substantial limitations on his capability to stand or walk as a result of his foot injury. Admittedly, "[i]t is difficult, indeed perhaps not possible to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA." *Kelly v. Drexel University,* 94 F.3d 102, 108 (3rd Cir.1996); *see* 29 C.F.R.Pt. 1630, App. § 1630.2(j) ("[A]n individual whose legs are paralyzed" or who "can only walk for very brief periods of time" is substantially limited in the activity of walking). Still, the burden rests with the plaintiff to offer more than conclusory and general statements about his leg injury. " 'Whether an impairment substantially limits a major life activity must be determined, not by how "disabling" the impairment sounds, but rather the impact of the impairment on the individual.' " *Ingles v. Neiman Marcus Group,* 974 F.Supp. 996, 1002 (S.D.Tex.1997) (quoting *McKey v. Occidental Chemical Corp.,* 956 F.Supp. 1313, 1318 (S.D.Tex.1997)); *see Aldrich v. Boeing Co.,* 146 F.3d 1265, 1270 (10th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

▮ That he wears a leg brace and experiences pain with excessive standing or walking is not enough evidence to allow a reasonable juror to conclude that the plaintiff's capacity for walking or standing is significantly restricted. *See, e.g., Taylor v. Pathmark Stores, Inc.,* 177 F.3d at 186–

87 (Plaintiff's "ability to stand or walk is not significantly less than that of an average person" just because he requires ten-minute hourly breaks and walks with a slight limp); *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (As a result of one leg being shorter than the other and her foot being permanently flexed, the plaintiff "walk[s] with a limp and move[s] at a significantly slower pace than the average person," but this does not reach "the level of a substantial impairment"); *Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) (Walking with "moderate difficulty or pain ... does not rise to the level of a disability") (collecting cases); *Kelly v. Drexel Univ.,* 94 F.3d at 109 (Plaintiff with "visible and apparent" limp who could not walk more than a mile, could not jog and had difficulty climbing stairs was not substantially limited in a major life activity) (collecting cases); *Brower v. Continental Airlines, Inc.,* 62 F.Supp.2d 896, 902–03 (E.D.N.Y.1999) (Expert's report stating that the plaintiff's foot bunions prevented "any extended walking or standing" showed the plaintiff experienced difficulty with walking but did not prove she was "disabled" under the ADA); *Miller v. Airborne Express,* 1999 WL 47242, at *5 (N.D.Tex. Jan. 22, 1999) (Following knee injury and surgery, the plaintiff was not substantially limited in his ability to stand though he preferred to lean on a rail and could stand only thirty minutes without resting); *Bochenek v. Walgreen Co.,* 18 F.Supp.2d 965, 970 (N.D.Ind.1998) (Knee problems after replacement surgery that caused numbness with prolonged sitting, that restricted walking to a few blocks without resting and that resulted in occasional pain did not constitute a substantial limitation on the activity of walking); *Ingles v. Neiman Marcus Group,* 974 F.Supp. at 1002 (Plaintiff was not disabled from walking despite numerous surgeries on both feet, the need to wear special types of footwear, and a restriction against extensive walking on hard surfaces); *Graver v. National Eng'g Co.,* No. 94–C–1228, 1995 WL 443944, at *9–11 (N.D.Ill.1995) (Though he walked

with a pronounced limp because of pain and stiffness in his ankles, the plaintiff was not significantly restricted in his ability to walk, care for himself, or work); *Richardson v. William Powell Co.,* No. C–1–93–528, 1994 WL 760695, at *3, *7 (S.D.Ohio Nov. 10, 1994) (Degenerative arthritis in hip caused plaintiff to limp and to struggle climbing stairs, but it did not interfere with a major life activity). "The EEOC's regulations define a person with a walking disability as someone who 'can only walk for very brief periods of time.' 29 C.F.R. § 1630.2(j) App; *cf. Deane [v. Pocono Medical Center,]* 142 F.3d [138] at 143 n. 4 [ (3rd Cir.1998) ] (regulations are entitled to substantial deference)." *Taylor,* 177 F.3d at 186 ("fifty minutes (per hour) is not a 'very brief' period").

■ As previously discussed in footnote three, the plaintiff has not submitted sufficient admissible medical evidence to prove a disability, *i.e.* that his impairment substantially limited a major life activity. The plaintiff's admissible medical evidence does not meaningfully discuss the nature, severity or duration of his leg injury. One circuit court has noted:

> There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury (*e.g.,* a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA.

*Katz v. City Metal Co., Inc.,* 87 F.3d 26, 32 (1st Cir.1996) (Testimony as to condition immediately after surgery does not necessarily establish a disability months after the surgery). The summary judgment record does not support the conclusion that this case is one where a lay jury properly could find a disability based on nothing more than the plaintiff's descrip-

tion of his injury and/or on the workers' compensation impairment ratings. There is nothing of record showing that the plaintiff's foot injury actually impeded his ability "to accomplish everyday tasks," to "lead a normal, average life," or to perform the duties of a forklift operator. *See Banks v. Hit or Miss, Inc.,* 996 F.Supp. 802, 807 (N.D.Ill.1998). Although conceivable that his foot injury may have diminished to some degree his former physical capacities for standing and walking, there is no evidence that he is significantly restricted in those abilities as compared to the average person in the general population.[4] *See, e.g., Gibbs v. St. Anthony Hospital,* 107 F.3d 20, 1997 WL 57156, at *2 (10th Cir. Feb. 12, 1997) (Table) (holding that evidence of a 25–pound lifting restriction "says nothing about the capabilities of the average person to allow a comparison"). In the absence of sufficient evidence to allow a reasonable jury to conclude that he is substantially limited in standing or walking, the plaintiff must present evidence specifically comparing her own standing or walking capability to that of an average person. *Cf. Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1173–74 (10th Cir.1996).

 The court now examines the effect of McCleary's foot injury on the major life activity of work. " '[T]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.' " *Sutton,* 130 F.3d at 893 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Instead, the plaintiff's burden is as follows:

> To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show "significant[ ] restrict[ion] in the

ability to perform either a *class of jobs* or a *broad range of jobs in various classes as compared* to the average person having comparable training, skills and abilities." *Id.* [29 C.F.R.] § 1630.2(j)(3)(i)

*Bolton v. Scrivner, Inc.,* 36 F.3d at 942; *see also Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 611 (10th Cir.1998). "In other words, 'an impairment must substantially limit employment in general, not merely the particular job that the plaintiff may wish to hold.' " *Nielsen,* 162 F.3d at 612 (quoting *Sutton,* 130 F.3d at 904). That the plaintiff is unable to return to his particular prior work "without some accommodation does not demonstrate a substantial limitation in the major life activity of working." *Bolton,* 36 F.3d at 943 (citations omitted). Thus, summary judgment is appropriate when the plaintiff fails to come forth with evidence " 'showing a significant restriction in his [plaintiff's] ability to perform either a class of jobs or a broad range of jobs in various classes.' " *Id.*

 The plaintiff produced no evidence showing the impact of his physical impairment on his ability to perform either a class of jobs or a broad range of jobs within various classes. At best, the plaintiff's evidence shows only his disqualification from a single position or a narrow range of jobs. *See, e.g., Young v. U.S. West Communications, Inc.,* 166 F.3d 1223, 1998 WL 849523, at *2 (10th Cir. Dec. 9, 1998) (Table); *Talk v. Delta Airlines, Inc.,* 165 F.3d at 1025. The record is devoid of any relevant vocational evidence regarding the geographical area accessible to the plaintiff, " 'the number and types of jobs utilizing similar training,

---

4. Of course, the plaintiff's representations on subsequent job applications regarding his physical condition undermine what admissible evidence of limitations was provided in the summary judgment record. Nonetheless, for purposes of this motion, the court finds that the record supports that the plaintiff needed to wear a leg brace and that he experienced pain when walking or standing for most of an eight-hour shift.

Admittedly, evidence of comparative abilities is not necessary in every case for the plaintiff to survive summary judgment on the issue of disability. *E.E.O.C. v. United Airlines, Inc.,* 185 F.3d 874, 1999 WL 397390, at *3 (10th Cir. Jun. 17, 1999) (Table). Such evidence, however, is critical here, as the plaintiff offers no evidence of any stringent medical restrictions being placed on his work or physical activities. *Cf. Id.*

knowledge, skills or abilities, within that geographical area, from which the ... [the plaintiff] is ... disqualified because of the impairment;' " or " 'the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is ... disqualified.' " *Bolton,* 36 F.3d at 943 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)). Summary judgment is appropriate when the plaintiff fails to produce any such evidence. *See, e.g., Anderson v. General Motors Corp.,* 176 F.3d 488, 1999 WL 240242, at *2 (10th Cir. Apr. 20, 1999) (Table), *petition for cert. denied,* —— U.S. ——, 120 S.Ct. 424, —— L.Ed.2d —— (1999); *Bolton,* 36 F.3d at 944. There being no evidence of a significant restriction in the plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes, the plaintiff has not made a prima facie showing of a disability and the defendant National is entitled to summary judgment.

IT IS THEREFORE ORDERED that the defendant National's motion for summary judgment (Dk.33) is granted;

IT IS FURTHER ORDERED that the defendant National's motion to strike (Dk.47) is granted in part and denied in part;

IT IS FURTHER ORDERED that the plaintiff's motion to reopen discovery for the limited purpose of discovering National's knowledge of McCleary's medical condition (Dk.49) is denied as moot in light of the summary judgment ruling.