**Dennis R. BARKER, Plaintiff,**

v.

**MARTIN MARIETTA MATERIALS, INC. d/b/a Martin Marietta Aggregates, Defendant.**

**No. 98–4220–DES.**

United States District Court, D. Kansas.

Feb. 1, 2001.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 22) brought pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff alleges he is disabled and defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") when it terminated him from his employment despite his ability to perform the essential functions of his position with reasonable accommodation. For the following reasons, defendant's motion is granted.

## I. BACKGROUND

The following facts concerning plaintiff's ADA claim are either uncontroverted or, if controverted, are construed in a light most favorable to the plaintiff.

Dennis Barker ("Barker") began his employment with the defendant, Martin Marietta Materials, Inc. ("Martin Marietta"), on February 28, 1986, as a quality control inspector. Barker's job included using equipment to check material specifications, including size, chemical content, density, and shape. He did not have to travel, and he worked from 7:30 a.m. to 5:00 p.m. on weekdays and occasionally worked weekends. In October 1990, Barker was promoted to sales representative. Barker was given an office at the East Topeka Quarry, but later his office moved to Big Springs. He had to travel, and his hours were irregular, in that he often had to meet with customers at night. Barker's duties included interacting with customers at three quarries. His assigned territory included Shawnee, Riley, Wabaunsee, Pottawatomie counties and Osage County.

Dave Cantrell ("Cantrell") was the district sales manager and Barker's immediate supervisor. Cantrell supervised defendant's quarries in Kansas and two quarries in the Kansas City, Missouri, area. His job included contacting customers, paperwork, making bids, quality control, and overseeing four salesmen. Bill Gahan ("Gahan") was the general manager for the Kansas district. Gahan would relate information to Cantrell, which effected Barker, but personally had little contact with Barker. Cantrell and Gahan had offices at the East Topeka quarry but later moved to another Topeka location in 1992.

Beginning in late 1996, and continuing through March 6, 1997, Barker began experiencing difficulties performing his duties and sought medical attention. In February 1997, Cantrell and Gahan informed Barker they believed his job performance had deteriorated and gave him a list of performance deficiencies. Barker did not respond to the criticism. Barker presented the matter before Deborah Lange ("Lange"), the human resources manager, telling her "they are going to fire me." Lange discussed the matter with Cantrell, who informed her the criticisms were based on customer complaints. Barker subsequently requested a leave of absence to determine whether his medical condition affected his job performance.

Barker initially requested a two-week absence, but remained off work from March 7, 1997, until he was discharged.

In March 1997, Barker was given a psychological evaluation by James Eyman, Ph.D. Dr. Eyman understood the demands of Barker's employment as requiring Barker to make independent decisions without supervision on his own initiative, be pleasant with customers when they were unreasonable, show no anger or irritability with customers, take criticism, collect delinquent accounts, and develop new customers. His understanding was based, at least in part, on defendant's description of Barker's job. The psychological testing showed Barker was in the lower sixth percentile of persons his age as for attention and concentration, lower thirty-third percentile for verbal memory, and in the fifty-ninth percentile for visual memory. Barker was suspicious of others and displayed some paranoia that others were trying to harm him. Barker also showed a tendency to blame others for whatever went wrong. Dr. Eyman diagnosed Barker with major depression, single episode with psychotic features. Dr. Eyman recommended psychotherapy and referred Barker to Brent Cain.

In August, Dr. Eyman again tested Barker. Barker's attention and concentration was still impaired, but he was less depressed, less paranoid, and thinking more clearly and organized. Barker's regular salary expired on September 6, 1997, after which he received unpaid vacation through September 24, 1997, when he reached an unpaid status. On September 4, 1997, Barker wanted his old job back and was concerned that he would not be able to handle his former job. On September 12, Dr. Susan Farmer told Barker his diagnosis was attention deficit disorder with a secondary diagnosis of major depression, anxiety.

On September 12, 1997, Lange wrote a letter to Dr. Eyman and Brent Cain requesting an indication of when and if Barker could return to work, and whether he would have any restrictions. Barker re-

members discussing the letter with Dr. Farmer, but not Dr. Eyman. On September 16, 1997, Dr. Eyman sent Lange a letter, setting out Barker's restrictions and the accommodations that would be required of defendant for Barker to return to his former job. Dr. Eyman described the following restrictions as a "fair appraisal:"

Although Mr. Barker is able to return to work, some of the sales skills listed in his job description will currently be difficult for him to accomplish. Being a good listener will be difficult at times because of his inattention. He will also have some difficulty organizing daily tasks to accomplish and in formulating long-term goals. His ability to make decisions under stress will be compromised. Regarding people skills, Mr. Barker still has the potential to be somewhat irritable so he may have mild difficulty controlling his anger in unfavorable customer situation. He also does not take criticism particularly well.

Given Mr. Barker's psychological condition and his job description, he will be able to return to work but will need some restrictions. He should not be placed in an overly stressful situation that requires quick decision-making. He will need someone every day to lay out and explain the tasks and duties he is to accomplish for that day and review his work at the end of the day. Instructions might need to be repeated more than once and he should be allowed to take notes. In addition, Mr. Barker may need time extensions to complete tasks.

A physician employed by defendant, Dr. Ron Plemmons, discussed Barker's restrictions with Dr. Eyman. Dr. Eyman stated he would not change any of the restrictions but agreed to lift any restriction Barker felt he did not need. Defendant informed Barker of Dr. Eyman's decision. Barker said he was not a doctor and could not waive any of the restrictions. Barker hoped to come back to work on a modified work schedule or part-time schedule,

which he later clarified meant his position would include the necessary accommodations.

Defendant determined that it could not meet Barker's restrictions with reasonable accommodation for three reasons: (1) Barker could not be supervised at the beginning and end of each workday; (2) there was no way to make Barker avoid overly stressful situations; and (3) Barker's anger could not be controlled. Defendant discharged Barker on October 14, 1997.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) ("The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

The ADA prohibits a covered entity form discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or

without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *See, e.g., Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 897 (10th Cir.1997); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995). The parties dispute whether Barker is an "individual with a disability." Under the ADA, a person is considered to have a disability if that individual either (A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) has a record of such an impairment, or (C) is regarded by the employer as having such an impairment. 42 U.S.C. § 12102(2). Barker argues he is disabled under subparagraph A of section 12102(2).

The court follows a three-step process to determine whether an individual has a disability under subparagraph A of the ADA's disability definition. *See Bragdon v. Abbott,* 524 U.S. 624, 631–41, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the court must determine if Barker suffers from a physical or mental impairment. *Id.* Barker suffers from a combination of mental impairments which include paranoia, major depression, single episode with psychotic features, attention deficit disorder, anxiety and an impaired ability to concentrate. Defendant appears to concede this point. The second step in the analysis is to identify those life activities affected by the impairment and determine whether they are "major" life activities under the ADA. *Bragdon,* 524 U.S. at 631–41, 118 S.Ct. 2196. Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. *See* 29 C.F.R. Pt. 1630, App. 1630.2(i). Barker claims he is limited in the major life activity of working.[1] *See Lowe v. Angelo's Ital-*

*ian Foods, Inc.,* 87 F.3d 1170, 1173 (10th Cir.1996) (identifying working as a major life activity under the ADA). The third and final step in the process inquires into whether Barker's impairment "substantially limits" the major life activity identified in step two. *Bragdon,* 524 U.S. at 631–41, 118 S.Ct. 2196. Defendant claims Barker has failed to demonstrate that his mental impairment substantially limits the major life activity of working.

The regulations recommend that the following factors be considered in determining whether an individual is substantially limited in a major life activity: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). When evaluating whether an individual's impairment substantially limits the life activity of working, the EEOC regulations include three additional factors for the court to consider:

(A) [t]he geographical area to which the individual has reasonable access;

(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

---

1. Barker claims his mental impairments substantially limit his "ability to work, think and care for himself." To the extent Barker claims thinking is a major life activity, the court considers that evidence in its analysis of whether Barker's ability to work was substan-

tially limited. Barker presents no evidence to support his claim that his ability to care for himself was substantially limited, therefore, the court will only consider Barker's claim that working was a substantially limited major life activity.

29 C.F.R. § 1630.2(j)(3)(ii). Thus, summary judgment is appropriate if an ADA plaintiff fails to "produce evidence showing a significant restriction in his 'ability to perform either a class of jobs or a broad range of jobs in various classes....'" *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994) (quoting 29 C.F.R. § 1630.2(j)(3)(i)), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *McCleary v. Nat'l Cold Storage, Inc.*, 67 F.Supp.2d 1288, 1302 (D.Kan. 1999).

■ The court will first consider the nature and severity of Barker's mental impairment. Barker presents evidence which shows his mental impairments restricted his ability to work in the following ways: (1) He should not be placed in an overly stressful situation that requires quick decision-making; (2) He will need someone every day to lay out and explain the tasks and duties he is to accomplish for that day and review his work at the end of the day; (3) Instructions might need to be repeated more than once and he should be allowed to take notes; and (4) He may need time extensions to complete tasks. Barker argues his impairments prevent him from performing jobs which require "multi-processing." The term multi-processing, as used by the parties, is the ability to perform multiple tasks simultaneously. Barker argues his inability to multi-process precludes him from an entire class of jobs or a broad range of jobs in various classes which require multi-processing.

■ Barker's position at Martin Marietta required that he complete multiple tasks simultaneously, including information gathering regarding the needs of customers and potential customers, contracts that were likely to be awarded by governmental units, needs of private contractors, quality and grade of product needed, ability of the quarries to produce the product,

transportation availability and cost, activity of competitors, bidding for jobs, knowing and identifying customers, and generating new customers.[2] However, the fact that Barker could not perform his particular job at Martin Marietta is not sufficient to establish that he is disabled. "To be substantially limited in the major life activity of working ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Id.*

Barker's restrictions do not suggest that he is substantially limited in his ability to work. After his discharge from Martin Marietta, Barker worked at Bettis Asphalt in quality control, which is substantially similar to the quality control position he held at Martin Marietta. Barker also worked as a sales person for Nutra Dog Food, demonstrating pet food. Both these jobs utilized Barker's skills. In addition, there are a host of different types of jobs available to Barker. Barker acknowledges he is able to perform a variety of jobs for which he applied, including sales positions at Cumulus Broadcasting, Gary Hardy Dodge/Laird Noller, Hunt Midwest Mining, and Pacesetter Corporation, insurance salesman at Banker's Life and Trust, customer service representative at Teletech, lab technician at Terracon, and program consultant with the State of Kansas. All these jobs require multi-processing. The fact that the jobs Barker is qualified for require less multi-processing or are not as difficult or demanding as his job at Martin Marietta does not make Barker disabled. Barker has a wide range of jobs available to him, many of which utilize his particular

---

**2.** Barker does not dispute that his position required "multi-processing" for the purpose of determining whether he was disabled. However, he does dispute defendant's de-

scription of the nature and extent of his duties for the purpose of determining whether his impairments could be reasonably accommodated.

skills. At best, Barker's evidence shows only his disqualification from a single position, or narrow range of jobs. *See McCleary*, 67 F.Supp.2d at 1302.

In addition to the lack of severity of Barker's impairments, the other factors to be considered by the court also do not support a finding of disabled. As to the duration of impairment, Dr. Eyman estimated that Barker would not need work restrictions in six months. Barker did not present evidence regarding the permanent or long term impact of his impairments. There is also no evidence as to the geographical area to which Barker has access or the number of jobs using or not using Barker's training, knowledge, skills, and abilities, from which he is disqualified due to his impairments.

Considering the number of jobs Barker admits he was qualified for, the actual jobs he accepted, and his apparent abilities to perform these jobs, the court finds Barker has failed to produce evidence demonstrating that he is significantly restricted from performing either a class of jobs or a broad range of jobs in various classes. *See Bolton*, 36 F.3d at 943. Because Barker has not shown he is disabled, summary judgment is appropriate.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 22) is granted.